**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Kruger; Tami Kapphahn, | No. CV-11-113-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| USAA Casualty Insurance Company; John and Jane Does I-X; ABC Corporations 1-5; XYZ Partnerships 1-5; and QRS Limited Liability Companies 1-5, | |
| Defendants. | |

Pending before the Court is Defendant USAA Casualty Insurance Company's Motion for Partial Summary Judgment (Doc. 28). For the reasons discussed below, Defendant's motion is granted.

**BACKGROUND**

On April 7, 2010, Plaintiff Daniel Kruger was injured in an automobile accident while a passenger in a Honda Prelude that was being driven by his friend, Jeremy Ramsey. The Honda Prelude was insured by Ramsey with Progressive Advance Insurance Company and carried liability limits of $15,000 per person and medical payments ("MP") coverage of $10,000. After the accident, Kruger submitted liability and MP claims to Progressive, which subsequently paid Kruger the $15,000 liability limits and the $10,000 MP limits under Ramsey's policy. At the time of the accident, Kruger owned a Dodge Stratus that was insured by Esurance Insurance Company; under the Esurance policy, Kruger had underinsured

motorist ("UIM") coverage of $25,000. After the accident, Kruger submitted a UIM claim to Esurance for which Eusurance paid Kruger the full $25,000.

As of the time of the accident, Kruger was living with Co-Plaintiff Tami Kapphahn.[1] At that time, Kruger and Kapphahn jointly owned a 2006 Dodge Caravan which was insured by Defendant USAA Casualty Insurance Company. The Caravan's insurance policy (the "Policy") had been issued to Kapphahn several years prior and carried UIM benefits of $300,000 and MP benefits of $2,000. Kapphahn was listed on the Policy's Declarations page as the "Named Insured" and is the sole person listed in the declarations as an "Operator." (Doc. 29-1, Ex. H at 000006). The Declarations page also identifies "Co-Owner Daniel M Kruger" as having an "Addnl Interest" in the Policy and states in relation to him that "ENDT A073 applies." (*Id*.). ENDT A073 is a form entitled Additional Covered Person Endorsement which states that "We agree, with respect to the covered auto described in the Declarations, Part A. Liability Coverage, applies to each additional covered person named in the Declarations, but only to the extent that such additional covered person qualifies as a **covered person** under Definition No. 3 of **covered person** in Part A of the policy." (Doc. 29-1, Ex. H at 000042) (emphasis in original). Part A's definition of the term "covered person" states as follows:

> **Covered person** as used in this Part means:
>
> 1. You or any **family member** for the ownership, maintenance, or use of any auto or trailer.
>
> 2. Any person using **your covered auto.**
>
> 3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom coverage is afforded in 1. or 2. above.

(Doc. 29-1, Ex. H at 000023) (emphasis in original).

Prior to the accident, Kapphahn twice contacted USAA regarding the addition of Kruger to her Policy. On June 14, 2005, Kapphahn contacted USAA electronically and

---

[1] He has been living with Kapphahn, to whom he is not related or married, since at least 2006.

- 2 -

1  requested a quote to add Kruger and his vehicle to her Policy. USAA responded that it could
2  only add Kruger to the Policy under certain circumstances and that it would need additional
3  information to determine if Kruger was eligible for coverage. On September 19, 2006,
4  Kapphahn called USAA via telephone to again inquire into adding Kruger and his vehicle
5  to her Policy. During the September 19 call, "the only eligibility requirement that was given
6  was that USAA would not insure a vehicle that was solely owned by Daniel Kruger unless
7  Tami and Daniel were married." (Doc. 29-1, Ex. A, Request No. 8). This inquiry did not
8  constitute an inquiry as to whether USAA would insure a vehicle that was jointly owned by
9  Kapphahn and Kruger, nor did it constitute an inquiry as to whether Kruger would be entitled
10 to UIM coverage if he was considered covered when driving a vehicle jointly owned with
11 Kapphahn, but was hit by an underinsured motorist while riding in another car. Neither
12 inquiry resulted in Kruger or his vehicle being added to the Policy. On June 18, 2007,
13 Kapphahn and Kruger jointly purchased the 2006 Dodge Caravan mentioned above. Upon
14 purchasing the Caravan, Kapphahn used USAA's website to request that USAA remove a
15 Dodge Neon that had been listed on her policy and replace it with the Caravan. In July 2007,
16 USAA mailed Kapphahn an Automobile Policy Packet to notify her that her requested
17 changes had been made.

18 The Policy Packet contained an amended copy of her Policy and a copy of the
19 Additional Covered Person Endorsement discussed above. The Policy Packet also contained
20 a section entitled "IMPORTANT MESSAGES," which stated:

> Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs. Required information forms are also enclosed for your review.

24 (Doc. 29-1, Ex. P at 0000300). Also enclosed in the Policy Packet was a document
25 entitled Arizona Automobile Insurance Identification Cards on which two insurance cards
26 were printed. On this document, printed above the insurance cards, is the message:

> The state of Arizona requires you to show evidence of financial responsibility when registering your motor vehicle, and upon request of a law enforcement officer.

- 3 -

> To assist you with this requirement, we have attached two ID cards for each of your motor vehicles insured for liability. Give one card to the Motor Vehicle Division when you register your vehicle.

(Doc. 29-1, Ex. P at 0000302). The insurance cards themselves list both Kapphahn and Kruger under the heading "Insured." (*Id.*). The back side of the insurance card states "Coverage meets the limits required by law." (*Id.*). USAA never made any verbal statements to Kapphahn that the Policy provided equal amounts of coverage for her and Kruger. Further, the document on which the cards were printed specified that the cards only provided evidence of the required liability coverage on the vehicle necessary for the vehicles to be registered

On August 31, 2010, Kruger submitted UIM and MP claims to USAA related to the injuries he sustained in the April 7, 2010 automobile accident. In October 2010, USAA denied both his UIM and MP claims. On December 17, 2010, Plaintiffs filed their Complaint in this action in the Maricopa County Superior Court. The action was removed to this Court on January 18, 2011, and on April 21, Plaintiffs filed an Amended Complaint. In the Amended Complaint, Plaintiffs bring three counts against USAA: 1) Breach of Contract; 2) Bad Faith; and 3) Insurance Producer Negligence. Defendant USAA now moves for summary judgment on counts One and Three. (Doc. 28).

**DISCUSSION**

**I.   Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)

1 (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)  (quoting *Anderson*,  477 U.S. at 250) (emphasis in original).

## II. Legal Analysis

### 1. Count One – Breach of Contract

Defendant USAA contends that the Court should enter summary judgment against Plaintiffs on their Breach of Contract claim because Kruger does not qualify as a "covered person" for UIM or MP benefits under the Policy. (Doc. 28). In their Response, Plaintiffs contend that USAA seeks to "avoid coverage because of an exclusion, limitation or condition" and therefore has the burden of proof to show that Kruger lacks coverage. (Doc. 30 at 4). Even if USAA bears the burden of proof, however, it has met its burden. For instance, USAA has shown that Kruger is not listed as an insured on the Policy's Declarations page, but only as the holder of an "Addnl Interest." (Doc. 29-1, Ex. H at 000006). Defendant has further demonstrated that under the Policy's Additional Covered Person Endorsement, an additional interest holder is only entitled to liability coverage under the Policy. (Doc. 29-1, Ex. H at 000042). And Plaintiffs raise no facts that dispute Defendants' assertion that Kruger is not entitled to coverage under the written terms of the Policy. Instead, Plaintiffs focus on the argument that Defendant is required to pay Kruger the Policy's UIM and MP benefits under the reasonable expectations doctrine. (Doc. 30 at 5–8).

Under the doctrine of reasonable expectations, a court may decline to enforce an unambiguous boilerplate term in a contract if the court finds that "the drafter had reason to believe that the adhering party would not have assented to the particular term had he or she known of its presence.**"** *Gordinier v. Aetna Cas. & Sur. Co.* 154 Ariz. 266, 272, 742 P.2d 277, 283 (1987)**.** In *Gordinier v. Aetna Casualty & Surety Company*, however, the Arizona Supreme Court held that where insurance contracts are concerned, courts may only use the doctrine of reasonable expectations to refuse enforcement in four types of situations. 154

- 5 -

Ariz., 266, 272–73 (1987). As discussed below, the instant case does not meet any of those standards.

### a.   Contract Terms Cannot Be Understood by Reasonably Intelligent Consumer

The first standard laid out by the Arizona Supreme Court under which a court may decline to enforce an unambiguous boilerplate term is "[w]here the contract terms, although non ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights." *Gordinier*, 154 Ariz. at 272. In the instant case, Plaintiffs contend that a reasonably intelligent consumer would think, upon reading the Policy, that Kruger and Kapphahn have equal coverage under the Policy and therefore are both entitled to UIM and MP benefits. (Doc. 30 at 5–6). However, there is no adequate basis on which a reasonably intelligent consumer checking on her rights would conclude as much. Kapphahn is listed as the "Named Insured" at the top of the declarations page. (Doc. 29-1, Ex. H at 000006). Kapphahn is also the only person listed under the heading "Operators," which is near the top of the page. (*Id.*). After identifying Kapphahn as the named insured and operator and describing the insured vehicle and its location, the Declarations Page lists four types of coverages and the policy limits for each: Part A – Liability; Part B – Medical Payments; Part C – Uninsured and Underinsured Motorists; and Part D – Physical Damages. Kruger's name then appears for the first and only time in the Policy near the bottom of the Declarations Page under the heading "Addnl Interest – Co-Owner." (*Id.*). Next to his name there is a note which states "ENDT A073 Applies." (*Id.*).

ENDT A073 is a form entitled Additional Covered Person Endorsement which is attached to the Declarations as part of Plaintiffs' Policy and which states that "*Part A. Liability Coverage*, applies to each additional covered person named in the Declarations." (Doc. 29-1, Ex. H at 000042) (emphasis added). This endorsement does not, however, in any way imply that Parts B, C or D apply to additional covered persons. A reasonably intelligent consumer would have understood upon reviewing the Policy that Kruger was only entitled to liability coverage and not UIM or MP coverage.

- 6 -

### b. **Insured Did Not Receive Full and Adequate Notice**

The second standard under which a court may decline to enforce a boilerplate term is where "the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage." *Gordinier*, 154 Ariz. at 273. In the instant case, Plaintiffs received full and adequate notice of the term in question. The front page of their Automobile Policy Packet states, under the heading **"IMPORTANT MESSAGES"**: "Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs." (Doc. 29-1, Ex. H at 000002) (emphasis added). As stated, the Declarations page identifies Kapphahn as the sole named insured and operator. Kruger, meanwhile is identified as the holder of an "Addnl Interest." (*Id.*, Ex. H at 000006). Although the words "Addnl Interest" might be insufficient to provide full notice that Kruger's benefits under the Policy differ from Kapphahn's, the Declarations page also states that "ENDT A073," the Additional Covered Person Endorsement, applies to Kruger. And, as discussed, this endorsement makes clear that Kruger is only entitled to liability coverage under the Policy. In short, the front page of the Policy Packet, taken together with the Declarations page and the Additional Covered Person Endorsement, provide full and adequate notice to Plaintiffs that Kruger is not entitled to UIM or MP benefits.

### c. **Objective Impression of Coverage in Mind of Reasonable Insured**

A third situation in which a court may decline to enforce a boilerplate term is "[w]here some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured." *Gordinier*, 154 Ariz. at 273. Plaintiffs concede that USAA "never made any verbal statements to Kapphahn that the Policy provided equal amounts of coverage for her and for Kruger." (Doc. 29, ¶ 60; Doc. 31, ¶ 60). Plaintiffs, contend, however, that during Kapphahn's September 19, 2006 phone call with USAA, the only eligibility requirements that were given for USAA to insure Kruger's vehicle under Kapphahn's policy were that Kapphahn also be an owner of the vehicle or that Kapphahn and Kruger be married. (Doc. 29-1, Ex. A, Request No. 8; Doc. 30 at 7). Plaintiffs

1 argue that because these were the only eligibility requirements mentioned by USAA,
2 "[w]homever at USAA told Ms. Kapphahn those were the requirements created an objective
3 impression that Kruger would be covered [for UIM and MP benefits] if she added him to her
4 policy if they bought a car together." (Doc. 30 at 7). Plaintiffs, however, do not contend that
5 Kapphahn ever requested UIM or MP coverage, nor do they produce any evidence to this
6 effect. Moreover, Kapphahn placed her 2006 phone call at a time when she and Kruger did
7 not jointly own the car she wished to add to her Policy. That USAA told her that she and
8 Kruger were not eligible because they were not joint owners may imply that, were they to
9 assume joint ownership, Kruger's vehicle would be eligible for some sort of insurance
10 coverage under Kapphahn's policy. Plaintiffs do not demonstrate, however, how indicating
11 that Kruger could add a separately-owned car to Kapphahn's Policy, if they were married,
12 creates a reasonable expectation that he would receive UIM coverage for accidents caused
13 by a third-party if Kapphahn insured a car jointly owned by Kapphahn and Kruger with
14 USAA. *See cf. State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 258, 782 P.2d 727,
15 734 (1989) ("General liability insurance is separate and distinct from the first party coverage
16 provided by either UM or UIM insurance."). Based on the September 19th phone call alone,
17 a reasonable jury could not find that Kapphahn had the objectively reasonable impression
18 that Kruger had coverage.

19 Plaintiffs further allege that the insurance cards sent to them by USAA created the
20 objective impression of equal coverage. (Doc. 30 at 7). These cards were included in the
21 Policy Packet and list both Kapphahn and Kruger under the title "insured." (Doc. 29-1, Ex.
22 H at 000004). The insurance cards, however, in no way imply that Kapphahn and/or Kruger
23 have UIM or MP coverage. To the contrary, the page on which the cards are printed states
24 that the cards are evidence that each insured has *liability* coverage:

25 > The State of Arizona requires you to show *evidence of financial responsibility* when registering your motor vehicle, and upon request of a law enforcement officer. To assist you with this requirement, we have attached two ID cards for each of your motor vehicles insured for *liability*.
26
27

28 (Doc. 29-1, Ex. H at 000004) (emphasis added). Were the Court to hold that the insurance

- 8 -

identification cards must include all exclusions to one's general coverage, the cards would themselves be transformed into large insurance contracts. This would defeat the identification cards' primary purpose as a quick and simple way to show proof of compliance with the law. *See cf. Matter of General Acc. Ins. Co. (LaMotta)* 149 A.D.2d 322, 324, 539 N.Y.S.2d 370, 373 (N.Y.A.D. 1989) ("The temporary insurance identification card was not a contract of insurance but merely evidence of one's existence.").

### d. Reasonable Belief of Coverage in Mind of Particular Insured

The fourth situation in which a court may decline to enforce a boilerplate term is where "some activity reasonably attributable to the insurer has induced a *particular insured* reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy." *Gordinier*, 154 Ariz. at 273 (emphasis added). This fourth standard is similar to the third standard, but seems to cover situations in which the insurer's conduct, while not creating an objective impression of coverage, would create a reasonable impression of coverage in the mind of the particular insured. Plaintiffs do not contend, however, that they were somehow uniquely situated from other insureds in a way that caused them to have such a reasonable impression.[2] Rather, Plaintiffs assert that this fourth standard is the same as the third. (*See* Doc. 30 at 8) ("This [fourth] scenario is substantially the same as 3. above."). And as discussed, Plaintiffs are not entitled to relief under the third *Gordinier* standard.

In sum, Plaintiffs do not contend that Kruger is entitled to UIM or MP benefits under the written terms of their insurance policy. And they have not produced evidence "such that a reasonable jury could return a verdict for [them]'" under any of the four strands of the *Gordinier* reasonable expectations doctrine. *Villiarimo*, 281 F.3d at 1061 (quoting *Anderson,*

---

[2] For instance, Plaintiffs do not contend that they suffer from a lack of education or lack of mental capacity. To the contrary, in their answers to USAA's interrogatories Plaintiffs state that Kapphahn has a Bachelor of Science degree from DeVry University and that Kruger has completed three years of post secondary education at Moorhead State University. (Doc. 29-1, Ex. E, Request No.19).

- 9 -

1   477 U.S. at 248). Summary judgment is therefore granted against them on their Breach of
2   Contract claim.

### 2. Count Three – Insurance Producer Negligence

Defendant USAA also asks the Court to enter summary judgment against Plaintiffs on their third Count, Insurance Producer Negligence. (Doc. 28). "In a negligence action, the plaintiff must demonstrate that the defendant breached a duty the defendant owed the plaintiff and that the plaintiff was damaged as a result of that breach." *Meineke v. GAB Business Services, Inc.*, 195 Ariz. 564, 566, 991 P.2d 267, 269 (App. 1999). Plaintiffs contend that USAA breached its duty of care towards them by 1) "failing to provide . . . Kapphahn with the services of an actual agent"; and 2) "using a customer service representative who failed to provide adequate information to [Kapphahn] about the coverage she sought." (Doc. 29 at ¶ 63; Doc. 31 at ¶ 63; *see also* Doc. 30 at 10–11). Even when viewed, however, in the light most favorable to Plaintiffs, neither of these facts constitute a breach of any duty of care USAA may have had to Plaintiffs.

Plaintiffs first contend that USAA's failure to provide Kapphahn with the services of an insurance agent was a breach of its duty of care. (Doc. 29 at ¶ 63; Doc. 31 at ¶ 63; *see also* Doc. 30 at 10–11). Plaintiffs do not contend, however, that a USAA agent was unavailable had they wished to talk to one. They acknowledge that Kapphahn had previously been able to contact a USAA representative over the phone. (Doc. 30 at 7). Rather, Plaintiffs' breach of duty argument appears to be based on the sole fact that USAA *allows* customers to alter their insurance policies online. (*See id.*). Plaintiffs have provided no authority in support of this contention, and the Court finds that no reasonable jury could conclude that insurance companies breach their duty of care solely by providing customer service via website, particularly where those insurance companies also provide access to agents who can answer customers' questions.

Plaintiffs also contend that USAA breached its duty of care because one of its customer service representatives "failed to provide adequate information to [Kapphahn] about the coverage she sought." (Doc. 29 at ¶ 63; Doc. 31 at ¶ 63; *see also* Doc. 30 at 10–11).

- 10 -

1  Plaintiffs state that Kapphahn is prepared to testify at trial that in 2006 she called USAA and
2  talked to a customer service representative about the possibility of adding Kruger to her
3  insurance policy. (Doc. 30 at 12). Kapphahn is apparently also able to testify that "she was
4  told by [the customer service representative] that the 'eligibility requirement' for Daniel
5  Kruger to be an insured on her policy was either that they be married or own a vehicle
6  together." (*Id.*). The information sought by Plaintiff during that 2006 call, however,
7  concerned a vehicle for which Kruger was the sole owner. It would have been superfluous
8  for the USAA representative to elaborate on other potential requirements for eligibility given
9  that Kruger's vehicle was ineligible based on Kapphahn's lack of an ownership interest
10 alone. Moreover, Plaintiffs do not provide an affidavit from Kapphahn in relation to the
11 alleged eligibility requirements she received during the phone call. Nor do Plaintiff provide
12 any other corroborating evidence. They have therefore failed to produce evidence which
13 establishes a genuine issue of whether USAA breached a duty of care. *See Villiarimo v.*
14 *Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("This court has refused to find
15 a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving'
16 testimony.") (citing *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996)); *Brady*
17 *v. Blue Cross and Blue Shield of Texas, Inc.*, 767 F.Supp. 131, 135 (N.D.Tex. 1991)
18 ("[Plaintiff's] interrogatory answers are not sworn. The court may not construe them as a
19 Rule 56(e) affidavit or as other competent summary judgment proof."). This alone is fatal to
20 their negligence claim. *Meineke*, 195 Ariz. at 566.
21 / / /
22 / / /
23                                            **CONCLUSION**
24       Plaintiffs have failed to establish genuine issues of fact in relation to their Breach of
25 Contract and Insurance Producer Negligence claims which could reasonably be resolved in
26 their favor.
27       **IT IS THEREFORE ORDERED** that Defendant USAA Casualty Insurance
28 Company's Motion for Partial Summary Judgment (Doc. 28) is **GRANTED.**

- 11 -

DATED this 13th day of February, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge